UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-61016-CIV-COHN/HOPKINS

KEVIN McCARTHY,

    Plaintiff,

v.

AMERICAN AIRLINES, INC.,
AMERICAN EAGLE AIRLINES, INC.,
and EXECUTIVE AIRLINES, INC.,

    Defendants.
_____/



## ORDER DENYING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE FOR PERPETRATION OF FRAUD ON THE COURT

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss With Prejudice for Perpetration of Fraud on the Court [DE 149]. The Court has considered the Motion, Defendants' Supplement [DE 174], Plaintiff's Memorandum in Opposition [DE 178], Plaintiff's Memorandum in Opposition to Supplemental Motion [DE 199], Defendants' Reply [DE 197], Defendants' Reply regarding the Supplemental Motion [DE 213], and the record, and is otherwise fully advised in the premises.

In this Motion, Defendants request that the Court dismiss the above-referenced action with prejudice as sanction for alleged misstatements and misrepresentations made by Plaintiff Kevin McCarthy in his interrogatories and Rule 26 disclosures. In the initial Motion, Defendants allege that Mr. McCarthy failed to include Dr. Shamsad Begum, of Community Medical Center, in his interrogatory answers. Dr. Begum had apparently been treating Mr. McCarthy for several years prior to the accident that is the subject of this suit, and she had prescribed Methadone to treat his chronic pain from a

previous elbow injury. There was also some ambiguity in Mr. McCarthy's deposition answers regarding what medications he was taking on the day of the incident. In one excerpt cited by the Defendants, he responded, "Cudora, Tenalol, Glipizide is a diabetic. Some other water pill, I forget the name of it, for the blood pressure" when asked about what medications he had a prescription for in 2007. However, in another excerpt, cited by the Plaintiff, Mr. McCarthy responded to the question "What medications are you currently taking?" with the answer "I still take the blood pressure medications and the diabetic sometimes if the blood sugar is up high and the pain medication," specifying on a follow up question that the pain medication he was taking was Methadone.[1]

Defendants also argue that Mr. McCarthy was dishonest when he responded to a question about his prior medical history in the interrogatories. One of the interrogatories asked him whether he was suffering from "any physical infirmities, disability, or sickness at the time of the incident," to which he responded that he suffered from diabetes mellitus and hypertension. He included no information about his prior shoulder injury. As Plaintiff argues, however, the interrogatory does not ask specifically about prior injuries. Plaintiff also asserts that he felt his shoulder injury had been resolved at the time of the accident, and so he did not believe himself to be suffering from "physical infirmities" or "disability" at that time.

---

[1] Although Mr. McCarthy did not clearly disclose the name of Dr. Begum or the fact that he was taking Methadone prior to the accident in his deposition or interrogatory answers, the record shows that he did freely discuss this treatment with a number of his examining physicians, including the surgeon who conducted his Rule 35 medical examination.

2

In their Supplemental Motion, Defendants explain that they recently discovered an additional five healthcare providers who were also not disclosed by the Plaintiff in his Rule 26 disclosures or interrogatory answers: Dr. James Milne, Dr. Kevin Wilson, Dr. Delgado-Garcia, Dr. Verano Hermida, and Dr Ely Pelta. Although all these providers did treat Mr. McCarthy within the ten years prior to the accident, and thus, as Plaintiff concedes, should have been disclosed in his interrogatory answers, it appears that none of them treated Mr. McCarthy any later than 2005. Dr. Wilson is a partner of Dr. Kessler's, and Mr. McCarthy saw Wilson on a visit to Kessler's office but does not remember him specifically.[2] Dr. Delgado-Garcia was Mr. McCarthy's treating physician under worker's compensation for the elbow injuries prior to Dr. Kessler taking the lead on his treatment, and Dr. Hermida gave a second opinion as to that injury. Dr. Milne did not treat the elbow injury directly, but provided pain management.

Dr. Pelta is a psychiatrist who treated Mr. McCarthy on a referral from his worker's compensation carrier from October 2000 through July 2004 for depression related to his work-related elbow injury. Although he did not disclose Dr. Pelta in his interrogatory answers, Mr. McCarthy discussed his psychiatric treatment during his Rule 35 exam with Dr. Zager, and explained both the scope of the treatment and provided the name of the psychiatrist to Dr. Zager at that time.

Trial courts have the inherent power to impose sanctions on litigants, up to and including dismissal with prejudice, based on their perpetration of fraud. Aoude v. Mobil

---

[2] Dr. Kessler was the orthopedic surgeon who performed the surgery for Plaintiff's elbow injury, and his name was disclosed in Plaintiff's original answers to interrogatories.

3

Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989). "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Id. However, this is "an extreme remedy, and should not lightly be engaged." Id. "In calibrating the scales, the judge should carefully balance the policy favoring adjudication on the merits with competing policies such as the need to maintain institutional integrity and the desirability of deterring future misconduct." Id.

Based upon a review of the evidence presented by the Defendant, the Court concludes that the extreme sanction of dismissal is not warranted in this case. Although Plaintiff should have disclosed the names of all his treating physicians for the last ten years, as he was asked to do in the interrogatories, Defendants have not established through clear and convincing evidence that these omissions are part of an "unconscionable scheme" calculated to perpetrate a fraud. In fact, Mr. McCarthy's openness with his treating physicians, including the physician who conducted the Rule 35 exam, demonstrates that he did not intend to conceal his prior treatment with these physicians. Furthermore, the name of his primary treating physician for the prior elbow injury, Dr. Kessler, was clearly disclosed in the interrogatory answers, which directly contradicts any assertion by the Defendants that Mr. McCarthy was somehow attempting to conceal his prior injury.

While it may be true that Mr. McCarthy's previous elbow injury bears some relationship to the injuries sustained during the accident at issue in this case, this is a

4

question of fact that is best left to a jury's consideration. Likewise, Mr. McCarthy's previous alleged dependence on pain medications and previous psychiatric treatment related to the elbow injury, and his failure to disclose them in his responses to interrogatories, may have some relevance to his credibility, but this too is a determination of fact best left to a jury. Dismissal with prejudice is simply not warranted here, where there is no clear evidence on the record of an intent to defraud the Court.

However, it does appear that Defendants may have suffered some prejudice due to Plaintiff's failure to disclose the additional physicians. Although Defendants were able to take the deposition of Dr. Begum prior to the close of discovery, they only recently discovered the prior treatment with Dr. Milne, Dr. Wilson, Dr. Delgado-Garcia, Dr. Hermida, and Dr. Pelta. However, any prejudice may be cured by providing Defendants with the opportunity to obtain discovery from these physicians. Because the existence and treatment of the previous elbow injury was clearly disclosed to the Defendants long ago, any new discovery from other physicians who simply contributed to the treatment of this injury would merely supplement what the Defendants already know about this injury. Thus, a limited re-opening of discovery for the purpose of obtaining this additional information and deposing the newly-discovered physicians, as needed, will cure any prejudice to the Defendants without necessitating any further delays in the trial and adjudication of this matter.

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss With Prejudice for Perpetration of Fraud on the Court [DE 149] and Supplemental Motion [DE 174] are **DENIED**. It is further

**ORDERED AND ADJUDGED** that discovery in this matter is **RE-OPENED** for the limited purpose of subpoenaing records from the newly-discovered physicians and taking the depositions of those physicians, as needed, until **July 9, 2008**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 23rd day of June, 2008.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record