UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-61016-CIV-COHN/HOPKINS

KEVIN McCARTHY,

    Plaintiff,

v.

AMERICAN AIRLINES, INC.,
AMERICAN EAGLE AIRLINES, INC.,
and EXECUTIVE AIRLINES, INC.,

    Defendants.
_____/

**SCANNED**

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants' Motion for Summary Judgment [DE 155]. The Court has considered the Motion, Plaintiff's Memorandum of Law in Opposition [DE 190], Defendants' Reply Memorandum [DE 198], and the record, and is otherwise fully advised in the premises.

**I.   Background**

This case arose out of an incident occurring on January 3, 2007 at the Georgetown, Bahamas airport. Plaintiff Kevin McCarthy boarded American Eagle Flight 4956, which was bound for Miami, Florida, and attempted to stow his luggage in the overhead bin and under the seat in front of him. When he determined that the luggage would not fit, he took it back to the rear of the aircraft to speak with the flight attendant, Isis Harry, and informed her that it would not fit. Mr. McCarthy asked Ms. Harry what he should do with the bag, and she told him "you need to check it plane-side." (Kevin McCarthy Deposition, p. 43 [DE 190-2].) Mr. McCarthy then proceeded to the back

door of the aircraft, and attempted to get the attention of the baggage handlers on the ground, but was unable to do so because of the loud engine noise of the plane. Ms. Harry then allegedly touched Mr. McCarthy, causing him to lose his balance. When he was unable to grab the handrail of the aircraft stairs, because it did not extend all the way up to the aircraft, McCarthy either fell or jumped out of the aircraft, sustaining a number of injuries.

## II.     Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

## III.    Summary Judgment as to American Airlines, Inc.

In this Motion, Defendants seek entry of summary judgment as to Defendants American Airlines, Inc. ("American") and American Eagle Airlines, Inc ("American Eagle"). Defendants argue that Defendant Executive Airlines, Inc. ("Executive") has conceded that it owned and operated the flight in question, and so summary judgment should be entered in favor of the other two Defendant airlines. Plaintiff conceded at the

2

hearing on this Motion that there was no evidence on the record to support the contention that American owned or operated the flight, and the record contains no evidence indicating a contractual relationship or any other relationship between American and either of the other two Defendants regarding the flight at issue. Accordingly, Defendants' Motion will be granted as to Defendant American.

However, the Court must evaluate whether or not there is evidence on the record that would support Plaintiff's contention that either or both American Eagle and Executive are liable in this case. The Court is somewhat hampered in this analysis by the lack of a clear definition for the term "carrier."[1] Article 17 of the Montreal Convention states that "the carrier" is liable for damages sustained, but the Convention itself provides no definition of the term "carrier." Convention for International Carriage by Air, Done at Montreal May 28, 1999, S. Treaty Doc. No. 106-45, 1999 WL 33292734 (hereinafter cited to as "Montreal Convention"). The Montreal Convention's predecessor, the Warsaw Convention, likewise lacked a definition of the term "carrier," but courts construed a definition. For example, in Shirobokova v. CSA Czech Airlines, Judge Stein of the Southern District of New York concluded that the manner in which the term "carrier" was employed in the Warsaw Convention indicated that the term was meant to encompass only those airlines that actually transport passengers or baggage.

---

[1] Defendants have provided a definition of the term "aircraft carrier" from Title 14 of the Code of Federal Regulations, which regulates the aviation industry. See 14 C.F.R. §1.1. However, Defendants provide no authority, and the Court can find none, that would support the applicability of an FAA definition when interpreting terms as used in the Montreal Convention.

376 F. Supp. 2d 439, 442 (S.D.N.Y. 2005).[2] Specifically, Judge Stein concluded that Delta Airlines, which was the code sharing partner with CSA, was not a "carrier" of the flight at issue simply by virtue of its code sharing relationship.[3] In support of this conclusion, Judge Stein cited to several other cases that had reasoned similarly. In the case In re Air Crash at Taipei, on Oct. 31, 2000, the district court concluded that "[t]he language [of Article 17] does not speak of dual or multiple carriers, but rather 'the carrier' suggest[s] that only one entity – the operator of the aircraft – bears liability for damages arising from injuries occurring on the aircraft." 2002 WL 32155476, at *5 (C.D. Cal. 2002). In another case, Kapar v. Kuwait Airways Corp., the D.C. Circuit concluded that "[o]ur understanding of the term 'carrier,' as utilized in the Convention, comports with the well-settled principle that an airline that issues a ticket for carriage on another airline acts only as the *agent* for the actual carrier." 845 F.2d 1100, 1103 (D.C. Cir. 1988). Thus, in considering these cases, it appears that the term "carrier" under the Warsaw Convention was believed to include only the airline that actually operated the flight in question in a given case. Under such a definition, American Eagle would not be liable to Mr. McCarthy unless he could provide evidence to show that American Eagle had actually operated the flight, and in any event, only one of the Defendant carriers would be liable at all.

However, the Court cannot rely on this definition because the Montreal

---

[2] The Warsaw Convention was applicable in that case because the incident at issue occurred before the Montreal Convention had taken effect in the United States. Id. at 441 n.2.

[3] "A code sharing agreement is simply 'an arrangement whereby a carrier's designator code is used to identify a flight operated by another carrier.'" Id. at 442.

Convention differs from the Warsaw Convention in a significant respect. In the Montreal Convention, the drafters included an entire chapter dedicated to addressing the distinction and relationship between a contracting carrier and an actual carrier: Chapter V. This chapter applies when a person, the "contracting carrier" makes a contract of carriage governed by the Convention with a passenger, and another person, the "actual carrier" actually performs the carriage, in whole or in part, pursuant to the authority from the "contracting carrier." Article 39, Montreal Convention. This authority is presumed in the absence of proof to the contrary. Id. Under the Convention, where there is a contracting carrier and an actual carrier, both carriers "shall, except as otherwise provided in this Chapter, be subject to the rules of this Convention, the former for the whole of the carriage contemplated in the contract, the latter solely for the carriage which it performs." Article 40, Montreal Convention. The other articles of Chapter V go on to clarify and explain the obligations of contracting carriers and actual carriers under the Convention.

Additionally, the documents accompanying the Montreal Convention provide further support for the applicability of Chapter V to a case such as this one. In his Letter of Transmittal, submitted with the Treaty to the Senate for consent to ratification, President William J. Clinton listed, among the benefits of the Montreal Convention, that it "clarifies the duties and obligations of carriers engaged in code-share operations." Letter of Transmittal, Montreal Convention, S. Treaty Doc. No. 106-45, 1999 WL 33292734. Similarly, the Letter of Submittal from the Department of State to the President states in summary:

> Articles 39-48 [Chapter V] of the Convention define the rights of

>passengers and consignors in operations where all or part of the carriage is provided by an airline that is not party to the contract of carriage (e.g., code-share operations, freight consolidators, etc.) . . . Pursuant to Article 40, when a claim arises under the Convention, a claimant may bring suit against the carrier from which the carriage was purchased or against the code-sharing carrier operating the aircraft at the time of the accident.

Letter of Submittal, Montreal Convention. Later, in the Conclusion section, this Letter notes the shortcomings of the voluntary IATA/ATA agreements and clarifies why the Montreal Convention is needed, stating "[f]inally, in the case of code-share operations, the IATA/ATA Agreements do not assure passengers and cargo consignors of recourse against *both the contracting carrier and the actual carrier operating the flight*." Letter of Submittal, Montreal Convention (emphasis added). Clearly, the language included in the Montreal Convention regarding contracting carriers and actual carriers contemplated that more than one carrier could be liable to a passenger. Counsel for Defendants argued at the hearing that there could be only one carrier, based on the use of the singular "the carrier" in Article 17. Although this argument tracks with the analysis used by courts in evaluating cases under the Warsaw Convention, it seems to be plainly contradicted by the added language in Chapter V of the Montreal Convention.

Based upon a reading of the plain language of the Montreal Convention, and absent any arguments from the parties that would suggest otherwise, the Court concludes that there can, in fact, be more than one "carrier" responsible for Mr. McCarthy's injuries. There is at least some evidence on the record that would suggest that American Eagle is, at a minimum, a "contracting carrier." Specifically the Court relies on the evidence that this flight was billed as an American Eagle flight, which would indicate a code-sharing relationship with Executive Airlines. Accordingly,

6

summary judgment in favor of American Eagle is not appropriate at this time.[4]

### IV.  Maintenance of Rear Stairway

Defendants also seek summary judgment in their favor on the claims in Counts II, IV, and VI of the Complaint that deal with failure to properly maintain the rear stairway in a safe condition. The Court notes that because the burden of proof falls on the Defendants to prove that they were not negligent, pursuant to the Montreal Convention, Defendants have an even greater burden than usual at the summary judgment stage. Plaintiffs' expert witnesses have provided testimony that the stairway was not maintained in a safe condition. Therefore, all that Defendants can show on this point is a disputed issue of material fact, and summary judgment is not appropriate.

### V.  FAA Regulations

Defendants also seek summary judgment as to the design defect argument made by the Plaintiff, based on an argument that the Federal Aviation Administration regulations preempt any claim based on design defect. Defendants' first two arguments, that they did not design the stairway or have any control over the design of the stairway, appear to have no bearing on the Plaintiff's claim int his case. Plaintiff does not claim liability based solely on the negligent design; rather, Plaintiff claims that there was a known dangerous condition on the stairway, and that the Defendants failed to correct it. Thus, it is the knowledge of the dangerous condition and subsequent

---

[4] Establishing concrete legal definitions of the terms "carrier," "contracting carrier," and "actual carrier" does not appear to be needed at this juncture, in light of the evidence on the record. However, the Court notes that, ultimately, the Court must provide the jury with clear definitions of these important terms, and so the parties should be prepared to address this issue prior to the commencement of the trial in this matter.

failure to correct it that constitutes the negligence alleged, not the actual design defect itself.

Defendants' third argument, that summary judgment is warranted because the design of the aircraft complies with FAA standards, also lacks merit. The Eleventh Circuit addressed a similar argument in Public Health Trust of Dade County, Fla. v. Lake Aircraft, and concluded that where federal aircraft design regulations did not require, but did permit, the use of a safer design on aircraft, the regulations did not preempt a claim for negligence for failure to use the safer design. 992 F.2d 291, 295 (11th Cir. 1993). Thus, Plaintiff's claims that Defendants should have gone above and beyond the minimum federal standards to ensure the safety of the stairway are not preempted.

Finally, Defendants argue that Plaintiff has not produced any evidence indicating that the FAA would have permitted any alternations to the design that would have made the stairway safer. However, this argument must fail, because not only is there a disputed issue of material fact in the record on this point, but it is actually the Defendants who bear the burden of proving that they were not negligent. Thus, it would be Defendants' burden to show that the FAA would not have permitted a safer design, and Defendants point to no uncontroverted record evidence establishing that fact. Therefore, summary judgment will not be entered in favor of the Defendants on the design defect claim.

**VI.   Meaning of "Accident" Under Montreal Convention**

Defendants next argue that the incident at issue in this case does not constitute an "accident" under the Montreal Convention, and because the Montreal Convention

creates the sole cause of action available to the Plaintiff, summary judgment should be entered in their favor on the entirety of the Complaint. It is true that not every injury sustained during an airplane flight constitutes an "accident" for purposes of liability under the Montreal Convention. The Supreme Court has held that liability exists under the Warsaw Convention,[5] the predecessor to the Montreal Convention, "only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." Air France v. Saks, 470 U.S. 392, 405 (1985). Under this definition, "when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply." Id. at 406.

Defendants also assert that the term "accident" only covers those occurrences that result from risks characteristic of air travel and that have some relationship to the operation of the airplane, citing several district court cases from New York, Massachusetts, and Puerto Rico. Defendants argue that the procedure of climbing up or down a stairway is not related to the operation of the airplane, and so Mr. McCarthy's fall does not constitute an "accident."

Defendants' arguments are without merit. Plaintiff points to Court of Appeals

---

[5] The term "accident," like the term "carrier" discussed above, is not defined in the Montreal Convention, and there is little case law available that addresses the meaning of such terms under the Montreal Convention because it was so recently ratified by the United States. However, both Defendants and Plaintiff refer to case law regarding the proper definition of the term "accident" under the Warsaw Convention. Thus, it would appear that they are in agreement that the term "accident" means the same thing under the Warsaw Convention and the Montreal Convention.

case law that states that injuries sustained while embarking and disembarking on the steps of an aircraft constitute "accidents" governed by Article 17. In Gezzi v. British Airways, the Ninth Circuit held that a passenger slipping on water present on the stairs while embarking constituted an "accident" under the Warsaw Convention. 991 F.2d 603 (9th Cir. 1993). The court reasoned that "the presence of water on stairs that are used to provide access to an airplane, unlike a fistfight between passengers, relates directly to the process of embarking on the plane. The presence of water on the stairs qualifies as an 'accident' because it was both 'unexpected or unusual' and 'external to' [the plaintiff]." Id. at 605 (quoting Air France v. Saks, 470 U.S. at 405). Similarly, in this case, Mr. McCarthy's fall was allegedly caused by the combination of his being directed to return his luggage to check plane-side and the touching by the flight attendant that caused him to lose his balance. Mr. McCarthy's fall on the aircraft stairs, caused by these external factors, would constitute an "accident" within the meaning of the Montreal Convention.

A careful consideration of the Gezzi opinion also weighs against the argument, relied upon by the Defendants, that an event's relationship to the operation of the aircraft is relevant to determining whether or not it is an "accident." The Gezzi court noted that this suggestion appears to have originated in an article by Professor D. Goedhuis, but that this suggestion has never been included in the text of the Convention and the Professor himself conceded that it was doubtful that all courts would accept such an interpretation of the term "accident." Gezzi, 991 F.2d at 605 n.4. Although not ruling one way or another as to whether to adopt this argument, the Ninth Circuit's discussion of it indicates skepticism. Although the Eleventh Circuit has not had

occasion to address this issue directly, it has cited to the Gezzi case, relying upon its holding in evaluating whether or not a given incident constituted an "accident," likely indicating agreement with its reasoning and analysis.  See Krys v. Lufthansa German Airlines, 119 F.3d 1515, 1522 n.11 (11th Cir. 1997).  Thus, the Court concludes that this argument is not binding law in this Circuit, finds it unpersuasive, and declines to apply it here.

Based on a thorough consideration of the applicable law, the allegations made in the Complaint, and the evidence produced on the record so far, the Court concludes that there is a disputed issue of material fact as to whether the incident that caused Mr. McCarthy's injuries constituted an "accident" within the meaning of the Montreal Convention.  Accordingly, Defendants' request that the Court enter summary judgment in their favor on this basis will be denied.

### VII.    Negligence Claims

Defendants also seek an entry of summary judgment in their favor on the entirety of each negligence claim based on the argument that they took all reasonable measures to avoid the accident.  Defendants primarily rely on the variety of procedures and training put in place by the airlines to avoid accidents such as Mr. McCarthy's.  However, Plaintiff has argued, and provided evidence to show, that the airline employees did not actually follow the prescribed procedures, resulting in Mr. McCarthy being incorrectly advised he could bring his luggage on board, then when it would not fit, being directed to return the luggage to the ground himself to be checked.  A review of the evidence on the record clearly shows that there are significant disputed issues of material fact on this point, so Defendants' request that the Court enter summary

judgment in their favor on the negligence counts in their entirety will be denied.

### VIII.  Preemption by the Airline Deregulation Act

Defendants next argue that the Airline Deregulation Act ("ADA") preempts Plaintiff's negligence claims based on baggage handling and boarding procedures. The ADA was enacted for the purpose of deregulating the airline industry, and "'to ensure that the states would not undo federal deregulation with regulation of their own,' the ADA included a preemption clause which read in relevant part: [N]o State . . . shall 'enact or enforce a law, rule, regulation, standard, or other provision having the force and effect of law relating to price, route, or service of an air carrier . . ..'" <u>Koutsouradis v. Delta Air Lines</u>, 427 F.3d 1339, 1343 (11th Cir. 2005). Defendants argue that baggage handling and boarding procedures fall within the category of "service," and thus, any state law suits based on these procedures would be preempted by the ADA.

A careful consideration of the operative Complaint in this matter reveals no claims arising out of state law. Plaintiff has plead two claims against each Defendant: one for strict liability under the Montreal Convention up to the Convention's liability limit, and one for all damages above that liability limit that were caused by Defendants' negligence. Every claim in the Complaint references the Montreal Convention specifically, and there is nothing in the Complaint that would suggest that any of these claims arises under state common law. Accordingly, although the Defendants may be correct that the ADA preempts certain state law negligence claims, the Court concludes that this argument has no relevance here, where no state law claims have been asserted. Accordingly, summary judgment will not be entered in Defendants' favor based upon this argument.

## IX. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment [DE 155] is **GRANTED in part and DENIED in part**. The Motion is **GRANTED**, and Summary Judgment will be entered by separate order, in favor of Defendant American Airlines, Inc. The Motion is **DENIED** in all other respects.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 27th day of June, 2008.

_____
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record